**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| INNOBAND, INC. | § | |
| | § | |
| vs. | § | CASE NO. 2:10-CV-191-TJW-CE |
| | § | |
| ASO CORP. AND ASO LLC | § | |

**MEMORANDUM OPINION AND ORDER**

**I.      INTRODUCTION**

Pending before the court is defendants Aso Corporation and Aso LLC's (collectively "Aso")  motion to transfer venue (Dkt. No. 22).  Aso contends that the Middle District of Florida, Tampa Division, is a more convenient forum than the Eastern District of Texas and, therefore, seeks to transfer venue pursuant to 28 U.S.C. § 1404(a).  The court, having considered the venue motion and the arguments of counsel, DENIES Aso's motion to transfer venue because the balance of the "private" and "public" forum non conveniens factors does not demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiffs.  *See In re Nintendo Co.*, 589 F.3d 1194, 1197-98 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Innoband, Inc. ("Innoband") is a Texas corporation with its principal place of business in Longview, Texas.  On or about June 7, 2010, Innoband filed its complaint against Aso in the Marshall Division of the Eastern District of Texas, alleging that Aso infringed U.S. Patent No. 7,626,071 (the "'071 Patent") by selling its QwikStrip adhesive bandages.  Aso is

headquartered in Sarasota, Florida. Aso Corporation is a holding company, and Aso LLC is a manufacturing and distribution entity with a primary manufacturing facility in Sarasota, Florida and a secondary facility in Ciudad Juarez, Mexico. Aso LLC is currently registered to do business in State of Texas as Texas Aso LLC ("Texas Aso") and had a facility in El Paso, Texas up until the time this lawsuit was filed.

Aso's QwikStrip product line features a patented 1-2-3 application process, which is described in U.S. Patent No. 6,124,522 (the "'522 Patent). The QwikStrip products are made pursuant to a license regarding the '522 Patent. The '522 Patent issued on September 26, 2000, naming Dr. Mark Schroeder of Houston, Texas as the inventor.

### III.   LEGAL STANDARD

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). But a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Nintendo*, 589 F.3d at 1197; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

The threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative conveniences of the current district against the transferee district. *Id.* In making the convenience determination, the Fifth Circuit considers several "private" and "public" interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors

include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.  The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

## IV.   ANALYSIS

The court will first address Aso's implicit argument that the court should disregard Innoband's Eastern District of Texas presence because it is nothing more than a legal fiction.  In *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010), the Federal Circuit refused to give deference to the fact that plaintiff had an office within the Eastern District of Texas because the court concluded that the plaintiff's "presence in Texas appears to be recent, ephemeral, and an artifact of litigation."  The court noted that the plaintiff had extensive ties to Michigan, which included being incorporated in Michigan and maintaining a registered office in Ann Arbor, Michigan.  The court found that the *Zimmer* plaintiff merely transported copies of its patent prosecution files from Michigan to its Texas office space, which it shared with another of its trial counsel's clients.  As such, the court concluded that the plaintiff's connection with the Eastern District of Texas was merely a legal fiction.

The court may assume, for purposes of this motion, that Innoband's presence in the Eastern District of Texas is entitled to only minimal weight. *See In re Microsoft Corp.*, --- F.3d ----, Misc. No. 944, 2011 WL 30771 at *4 (Fed. Cir. 2010). As will be demonstrated below, Aso has not carried its burden to show that transfer is proper in this case, even despite the fact that the court will essentially disregard Innoband's presence in this district.

1. **Proper Venue**

As a threshold matter, the court must determine if venue is proper in the Middle District of Florida. Transfer of a suit involving multiple defendants is ordinarily proper "'only if all of them would have been amenable to process in, and if venue as to all of them would have been proper in, the transferee court.'" *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 549 (E.D. Tex. 2009) (quoting *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir.1984)). Aso's headquarters is in Sarasota, Florida, which is in Sarasota County. The Tampa Division of the Middle District of Florida includes Sarasota County. Because of this substantial corporate presence within the Middle District of Florida, Aso is subject to personal jurisdiction in Florida such that the present action might have been brought there. Innoband does not dispute this. Therefore, the court finds that venue is proper in the Middle District of Florida as to all defendants.

2. **Private Interest Factors**

   a. *Relative Ease of Access to Sources of Proof*

The relative ease of access to sources of proof is the first "private" interest factor to consider. Aso contends that all of its corporate records, sales information, and technical documents related to the QwikStrip product line are located at its headquarters in Sarasota, Florida. Aso admits that it previously had a manufacturing facility in El Paso, Texas, but claims

that the facility did not produce the QwikStrip product. As such, Aso argues that this factor weighs overwhelmingly in favor of transfer to the Middle District of Florida.

In response, Innoband notes that it maintains its office in Longview, Texas, which is within the Eastern District of Texas. Further, Aso has admitted that the accused products are made at its manufacturing facility in Juarez, Mexico and then shipped through its distribution center in El Paso, Texas. Innoband has also identified, by name, two inventors and at least eight non-party witnesses that reside in Houston, Texas and that most likely have pertinent information regarding the development and licensing of the bandage patents now held by the Aso defendants. Furthermore, Dr. Schroeder and QwikStrip Products LLC made their own bandages and sold them through a nationwide sales force of sixty-five commissioned sales representatives. This entire operation was conducted out of Houston, Texas. Innoband argues that Dr. Schroder and QwikStrip Products LLC's activities in Houston, Texas will bear on the expressed market desire for alternatives to traditional bandages and the success (or lack thereof) of the solutions they marketed. Considering these sources of proof located in Texas, Innoband argues that this factor weighs against transfer to the Middle District of Florida.

In reply, Aso argues that although Innoband has identified numerous sources of proof in Texas, most of those sources are not actually located in the Eastern District of Texas – rather, they are located in the Western District (El Paso, Texas) and the Southern District (Houston, Texas). Innoband also argues that the witnesses named by Innoband are, for various reasons, irrelevant, and, therefore, should be disregarded.

In *Genentech*, the Federal Circuit held that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genetech*, 566 F.3d

at 1345. Aso contends that all of its corporate records, sales information, and technical documents related to the QwikStrip product line are located at its headquarters in Sarasota, Florida. But Aso does not deny that its QwikStrip products are shipped through its distribution center in El Paso Texas, which indicates that at least some of Aso's relevant documents are maintained in Texas. Furthermore, the court rejects Aso's argument that the two inventors and numerous non-party witnesses connected to QwikStrip Products LLC that Innoband identified are irrelevant. *See Genentech*, 566 F.3d at 1343 (holding that identified witnesses must be considered so long as their testimony is "relevant and material"). As Innoband notes, the relevance and materiality of these witnesses turns on more than prior art. The marketing and sales of QwikStrip products, and the licensing of QwikStrip to Aso (along with any prior licenses or attempts to license QwikStrip) would appear to be germane to a standard reasonable royalty analysis. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir.).

Although there will certainly be many relevant documents found in the Middle District of Florida, Innoband has identified numerous relevant sources of proof that are located in the State of Texas. As such, considering all of the facts above, the court concludes that this factor is neutral.

    b.  *Availability of Compulsory Process*

The next "private" interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. Rule 45 of the Federal Rules of Civil Procedure enables a court to compel a witness found within the state in which the court sits to attend trial. Rule 45, however, also limits the court's subpoena

power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Id.* Specifically, this rule requires a court to quash or modify a deposition subpoena purporting to require a non-party witness to travel more than 100 miles and permits a court to quash or modify a trial subpoena purporting to require a non-party witness to travel such a distance. FED. R. CIV. P. 45(c)(3)(A)(ii), (B)(iii).

Although Aso does not identify any non-party or party witnesses by name, Aso argues that all of its relevant witnesses reside either in Sarasota, Florida or outside the United States, thus placing them outside of the subpoena power of this court. Aso does not state whether its witnesses are party or non-party witnesses – subpoena power is relevant to non-party witnesses. Innoband, on the other hand, identifies by name the following non-party witnesses over which this court would have subpoena power: (1) a Texas patent prosecution attorney; (2) a Houston inventor whose patents have been assigned to Aso entities; (3) another Houston inventor whose patent has been assigned to an Aso entity; and (4) six other Texas individuals who managed a Texas entity with those two inventors. Innoband, however, has not identified any non-party witnesses residing within 100 miles of the Marshall Division of the Eastern District of Texas.

Given that Aso's headquarters are located in the Middle District of Florida, it is likely that many relevant witnesses reside in Florida – although Aso fails to identify those witnesses by name or state whether they are non-party witnesses. The evidence, however, also establishes that numerous relevant witnesses reside in Texas. Considering this, the court concludes that the availability of compulsory process factor is neutral.

      c.    *Cost of Attendance for Willing Witnesses*

Next, the court must weigh the cost for witnesses to travel and attend trial in the Eastern District of Texas versus the Middle District of Florida. The Fifth Circuit has explained:

> [w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

*Volkswagen I*, 371 F.3d at 204-05.  The court must consider the convenience of both the party and non-party witnesses.  *See id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

The issues here are similar to those discussed in the ease of access to sources of proof factor.  Aso and most of Aso's employees reside in the Middle District of Florida.  Although Aso fails to provide the court with their exact locations, it can be assumed that these witnesses would experience less inconvenience traveling to a court in the Tampa Division of the Middle District of Florida than they would traveling to this court.  As such, Aso argues that this factor strongly weighs in favor of transfer to the Middle District of Florida.

Aso, however, narrowly focuses its analysis on the cost of attendance for Aso and its Florida employees, while ignoring the relative cost of attendance for all other party and non-party witnesses.  For instance, the witnesses in El Paso, Texas would have to travel about 1,780 miles to reach Sarasota, Florida, as opposed to about 786 miles to reach Marshall, Texas – an increased burden of around 994 miles.  Furthermore, the witnesses in Houston, Texas would have to travel about 1,033 miles to reach Sarasota, Florida, as opposed to about 225 miles to reach Marshall, Texas – an increased burden of around 808 miles.

Section 1404(a) transfer motions may not be used to "swap" conveniences – i.e., Aso may not make its life more convenient by imposing an equal or greater inconvenience on others.

*Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) (recognizing that "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient); *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1083 (Fed. Cir. 1989) (holding that a "transfer is inappropriate when it merely serves to shift inconveniences from one party to the other."). As such, considering that Innoband has identified multiple witnesses who would experience a significantly greater burden if this case were transferred to the Middle District of Florida, the court concludes that this factor weighs against transfer.

    d.  *Other Practical Problems*

Practical problems include issues of judicial economy. *Volkswagen III*, 566 F.3d at 1351. The Federal Circuit has held that the "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). However, this case is in its infancy, and the parties have identified no practical problems that should deter transfer to the Middle District of Florida. As such, this factor is neutral.

  **3.**  **Public Interest Factors**

    a.  *Court Congestion*

In its § 1404(a) analysis, the court may consider how quickly a case will come to trial and be resolved. *Genentech*, 566 F.3d at 1347. This factor is the "most speculative," however, and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors." *Id.* The parties do not contend that there are any administrative issues associated with transferring this case to the Middle District of Florida, and as such, this factor is neutral.

9

### b. *Local Interest*

The court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

Aso argues that the Middle District of Florida has a strong local interest in resolving this case because Aso is headquartered in Sarasota, Florida. The court agrees that the transferee district has a strong local interest in this dispute. And given that the court has afforded little weight to Innoband's presence in the Eastern District of Texas, the court concludes that this factor weighs in favor of transfer.

### c. *Familiarity with the Governing Law*

One of the "public" interest factors is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. Both the Middle District of Florida and the Eastern District of Texas are familiar with patent law, and thus this factor is neutral. *See TS Tech*, 551 F.3d at 1320-21.

### d. *Avoidance of Conflict of Laws*

No conflict of laws issues are expected in this case, so this factor does not apply.

## V. CONCLUSION

Considering all of the "private" and "public" interest factors, the court concludes that Aso has not met its burden to show that the Tampa Division of the Middle District of Florida is a "clearly more convenient" forum than the Marshall Division of the Eastern District of Texas. All

but one of the factors are either neutral or weigh against transfer, and, as mentioned above, § 1404(a) transfer motions may not be used to "swap" conveniences. *Van Dusen*, 376 U.S. at 645-46. As such, the court DENIES Aso's motion to transfer venue.

SIGNED this 4th day of March, 2011.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE